UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
IN RE THE RESERVE FUND                          :
SECURITIES AND DERIVATIVE                                   MDL No. 09-md-2011 (PGG)
LITIGATION                                       :
----------------------------------------------------------------x
AMERIPRISE FINANCIAL SERVICES,                   :
INC. and SECURITIES AMERICA, INC.,
                                                 :
            Plaintiffs,
                                                 :
       v.                                                    No. 09-cv-1288 (PGG)
                                                 :
RESERVE MANAGEMENT COMPANY,
INC., RESRV PARTNERS, INC., BRUCE                :
BENT SR., BRUCE BENT II, and
ARTHUR T. BENT,                                  :

            Defendants.                          :
----------------------------------------------------------------x


REPLY MEMORANDUM OF LAW IN SUPPORT
  OF DEFENDANTS' MOTION TO DISMISS


DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
(212) 692-1000
Attorneys for Defendants
Reserve Management Co., Inc., Resrv Partners, Inc.,
Bruce Bent Sr., Bruce Bent II, and Arthur T. Bent

TABLE OF CONTENTS

| | Page |
|---|---|
| Table of Authorities……………………………………………………….. | ii |
| Preliminary Statement……………………………………………………….. | 1 |
| I. PLAINTIFFS' 10(b) CLAIM IS LEGALLY INSUFFICIENT……….. | 2 |
|     A. The Complaint Alleges No Actionable Misrepresentation or Omission…………………………………………………….. | 2 |
|         1. The Disclosures, As a Whole, Were Not Misleading…..….. | 2 |
|         2. There Was No Undisclosed Investment Strategy Change……………………………………………………... | 4 |
|     B. Plaintiffs Did Not Plead Reliance……………………………… | 5 |
|     C. Plaintiffs Have Effectively Conceded that SAI Lacks Standing to Assert Claims Based on the Events of September 15-16, 2008……………………………………… | 7 |
|     D. Plaintiffs Have Not Alleged Scienter for Their Pre-September 15 Claim……………………………………………. | 7 |
| II. THE COMPLAINT DOES NOT PLEAD A VIOLATION OF SECTION 11…………………………………………………… | 8 |
| III. DEFENDANTS CANNOT BE LIABLE AS SELLERS UNDER SECTION 12(a)…………………………………………… | 10 |
| IV. THE CONTROL PERSON CLAIMS FALL WITH PLAINTIFFS' PRIMARY CLAIMS…………………………………………….. | 10 |
| V. PLAINTIFFS' STATE LAW CLAIMS CANNOT STAND…………. | 10 |
|     A. SLUSA Applies Here and Bars Plaintiffs' State Law Claims… | 10 |
|     B. Plaintiffs' State Law Claims Are Otherwise Subject to Dismissal……………………………………………………. | 12 |
|         1. Demand Should Not Be Excused.………………………… | 12 |
|         2. The Minnesota Consumer Fraud Claims Cannot Stand…... | 13 |
| CONCLUSION……………………………………………………….. | 15 |

TABLE OF AUTHORITIES

| Case | Page(s) |
|---|---|

Amorosa v. Ernst & Young LLP,
  682 F.Supp.2d 351 (S.D.N.Y. 2010)..................................................................................11

In re AOL Time Warner, Inc. Sec. Litig.,
  503 F.Supp.2d 666 (S.D.N.Y. 2007)..................................................................................11

Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contrib. Plan v.
  Bank of New York Mellon Corp.,
  2010 U.S. Dist. LEXIS 38702 (S.D.N.Y. April 14, 2010) .......................................................5

Blasberg v. Oxbow Power Corp.,
  934 F.Supp. 21 (D. Mass. 1996) .......................................................................................13

Citiline Holdings, Inc. v. iStar Fin., Inc.,
  2010 U.S. Dist. LEXIS 29706 (S.D.N.Y. Mar. 26, 2010) ......................................................10

Clark v. Nevis Capital Mgmt., LLC,
  2005 U.S. Dist. LEXIS 3158 (S.D.N.Y. Mar. 2, 2005) ..........................................................6

Cromer Finance Ltd. v. Berger,
  205 F.R.D. 113 (S.D.N.Y. 2001) .......................................................................................6

Cummings v. Paramount Partners, LP,
  2010 U.S. Dist. LEXIS 51579 (D. Minn. Mar. 1, 2010)........................................................14

Diamond v. Pappathanasi,
  25 Mass. L. Rptr. 500 (Mass. Sup. 2009) ...........................................................................13

In re Global Crossing, Ltd. Secs. Litig.,
  322 F.Supp.2d 319 (S.D.N.Y. 2004)..................................................................................8

Gordon Partners v. Blumenthal,
  2007 U.S. Dist. LEXIS 35895 (S.D.N.Y. May 16, 2007),
  aff'd, 293 Fed. Appx. 815 (2d Cir. N.Y. 2008) ...................................................................11

Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,
  540 F.2d 27 (2d Cir. 1976)..............................................................................................5-6

Hunt v. Alliance North America Gov't Trust, Inc.,
  159 F.3d 723 (2d Cir. 1998).............................................................................................4

Hurley v. FDIC,
  719 F.Supp. 27 (D. Mass. 1989) .......................................................................................13

La Parilla, Inc. v. Jones Lang Lasalle Am., Inc.,
    2006 WL 2069207 (D. Minn. July 26, 2006) ........................................................................14

Lin v. Interactive Brokers Group, Inc.,
    574 F.Supp.2d 408 (S.D.N.Y. 2008)......................................................................................8

Loop Corp. v. McIlroy,
    2004 Minn. App. LEXIS 1146 (Minn. Ct. App. Oct. 5, 2004).................................................15

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
    547 U.S. 71 (U.S. 2006).........................................................................................................11

In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig,
    2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. April 14, 2006) ........................................................8

In re Morgan Stanley Information Fund Secs. Litig.,
    592 F.3d 347 (2d Cir. 2010)......................................................................................... 2-3, 4

N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC,
    2010 U.S. Dist. LEXIS 29711 (S.D.N.Y. Mar. 26, 2010) .........................................................9

In re Novagold Resources, Inc. Secs. Litig.,
    629 F.Supp.2d 272 (S.D.N.Y. 2009).......................................................................................4

In re NYSE Specialists Sec. Litig.,
    405 F. Supp 2d 281 (S.D.N.Y. 2005),
    aff'd in part and vacated in part on other grounds, 503 F.3d 89 (2d Cir. 2007) ......................12

In re Refco Secs. Litig.,
    503 F.Supp.2d 611 (S.D.N.Y. 2007).....................................................................................10

Securities Exchange Comm'n v. Reserve Management Co., Inc.,
    2010 U.S. Dist. LEXIS 16537 (S.D.N.Y. Feb. 24, 2010)................................................... 1, 7-8

Spielman v. Gen. Host Corp.,
    402 F.Supp. 190 (S.D.N.Y. 1975), aff'd, 538 F.2d 39 (2d Cir. 1976)......................................4

United Paperworkers Int'l Union v. Int'l Paper Co.,
    985 F.2d 1190 (2d Cir. 1993)..................................................................................................3

Yu v. State Street Corp.,
    2010 U.S. Dist. LEXIS 17147 (S.D.N.Y. Feb. 22, 2010).........................................................9

Zutz v. Case Corp.,
    2003 U.S. Dist. LEXIS 21555 (D. Minn. Nov. 21, 2003),
    aff'd in part and reversed in part on other grounds, 422 F.3d 764 (8th Cir. 2005)............ 13-14

Preliminary Statement

Plaintiffs begin their opposition papers with a gross overstatement: they say that "discovery" and "motion practice" in the SEC case "have already established that Defendants engaged in the wrongdoing alleged in the Complaint" and "amply" support their claims.[1] (Pls. Opp. p. 1.) But, unlike Plaintiffs' claims, the SEC's claims are limited to the events of September 15 and 16, 2008 – in the immediate aftermath of Lehman's bankruptcy – and are not based on allegations that, by acquiring Lehman commercial paper in 2007 and early 2008, Defendants misled investors about the risks associated with investing in the Fund. Moreover, even if there were greater overlap between Plaintiffs' claims and the SEC's, Plaintiffs would still be unable to ride the SEC's coattails to establish the sufficiency of their Complaint because, unlike Plaintiffs, the SEC has asserted no claims under the Securities Act, is not required to plead reliance, loss causation, or damages in order to state a fraud claim, and is exempt from the PSLRA's heightened pleading standard. Securities Exchange Comm'n v. Reserve Management Co., Inc., 2010 U.S. Dist. LEXIS 16537, *31-32 (S.D.N.Y. Feb. 24, 2010).

The same tendency toward overstatement is apparent throughout Plaintiffs' opposition papers. For example, Plaintiffs pronounce SLUSA inapplicable to their state law claims because their Complaint is not identical to the Class Action complaint and was filed by different counsel. (Pls. Opp. p. 19.) There is, however, no legal authority for the proposition that SLUSA only applies where identical complaints were filed by the same counsel. By its terms, SLUSA applies to an individual action as long as it is part of a group of lawsuits involving common questions of

---

[1] Defined terms have the same meaning in this reply as in Defendants' opening memorandum. In addition, "Pls. Opp." refers to Ameriprise's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint. New exhibits are annexed to the Reply Declaration of Fran M. Jacobs and referred to as "Ex. ___." Exhibits to the declaration submitted in support of Defendants' motion to dismiss the Class Action Complaint are referred to as "Roberts Ex.___."

law or fact (which this case is) – whether or not the attorneys in all of the cases are the same.

As we explain more fully below, Plaintiffs have not shown that any of their claims – state or federal – can be sustained. It is therefore respectfully submitted that the Complaint should be dismissed with prejudice.

## I. PLAINTIFFS' 10(b) CLAIM IS LEGALLY INSUFFICIENT

None of the arguments Plaintiffs make in their opposition papers refutes Defendants' showing that the Complaint fails to allege that (1) Defendants misrepresented the risk of investing in the Fund; (2) Plaintiffs actually relied on any purported misrepresentation; (3) SAI or its customers purchased or sold any shares after September 12, 2008; and (4) Defendants acted with scienter. Plaintiffs' securities fraud claim should therefore be dismissed.

A.   The Complaint Alleges No Actionable Misrepresentation or Omission

Plaintiffs do not cite a single case in the part of their opposition papers in which they assert that the Complaint adequately pleads that Defendants made misrepresentations prior to September 15, 2008 that are actionable under Section 10(b). (See Pls. Opp. 7-11.) Instead, they string together some statements that Defendants made about the Fund's goals and claim that these statements did not disclose a "shift" in the Fund's investment strategy and misled investors about the "true risk" of investing in the Fund. (Id. p. 9.) There are two problems with Plaintiffs' argument: (1) it does not consider Defendants' disclosures in their entirety and (2) it assumes – erroneously – that the Fund's investment strategy changed.

1.   The Disclosures, As a Whole, Were Not Misleading. The Second Circuit has held that, in analyzing disclosures for compliance with the securities laws, the disclosures should be reviewed "holistically and in their entirety. The literal truth of an isolated statement is insufficient; the proper inquiry requires an examination of defendants' representations together and in context." In re Morgan Stanley Information Fund Secs. Litig., 592 F.3d 347, 366 (2d Cir.

2010). An examination of Defendants' representations here shows that they disclosed the Fund's decision to acquire commercial paper as well as the associated risks. Thus, beginning in 2006, the Funds' Form N-1A stated that the Fund would invest in corporate debt obligations.[2] (Ex. M, pp. 6/165, 64/165.) The same document warned that (1) "[a]n investment in a Fund is not insured or guaranteed by the U.S. government, FDIC or any other government agency" (Id. at 9/165); (2) "[a]lthough each Fund seeks to preserve the value of your investment at $1.00 per share, it is possible to lose money by investing in a Fund" (Ibid.; Id. at 60/165); (3) "the value of each Fund's net assets may change based on the changes in market, economic, political, and financial developments" (Id. at 9/165); (4) "a decline in the credit quality of an issuer . . . can cause the value of a money market security to decrease" (Ibid.); (5) "[s]hares of the Fund are neither guaranteed nor insured by the U.S. government and there can be no assurance that a Fund will be able to maintain a stable net asset value of $1.00 per share" (Id. at 59/165); (6) "[t]here can be no assurance that a Fund will achieve its investment objective" (Ibid.); and (7) credit ratings "do not guarantee the performance of the issuer" and "[s]ubsquent to a security's purchase by a Fund, it may cease to be rated" (Id. at 64/165).

Defendants also disclosed the extent of the Fund's investment in Lehman commercial paper (Roberts Exs. 9, p. 11/78; 10, p. 13/143; 11, p. 6/16), and investors knew about Lehman's financial condition from extensive press coverage. United Paperworkers Int'l Union v. Int'l Paper Co., 985 F.2d 1190, 1199 (2d Cir. 1993) (in evaluating materiality of omission, courts consider "total mix" of available information, including "information already in the public domain and facts known or reasonably available to the shareholders").

Since Plaintiffs cannot deny that Defendants fully disclosed the Fund's investment in

---

[2]    By contrast, the Fund's 2005 Form N-1A stated that the Fund would not invest in commercial paper " [t]o further minimize investment risks." (Roberts Ex. 1, p. 5/89.)

-3-

Lehman commercial paper, they now fault Defendants for failing to tell investors that the Fund's commercial paper holdings were "so concentrated that the Fund would risk 'breaking the buck' upon the bankruptcy of a single company."[3] (Pls. Opp. p. 9.)  The Second Circuit has, however, held that "'[d]isclosure is not a rite of confession or exercise of common law pleading.'" Morgan Stanley, supra, 592 F.3d at 365 (internal quotation marks omitted.)  Here, Defendants disclosed the facts that would be important to investors – the Fund was purchasing commercial paper, including a specified amount of Lehman paper; shares in the Fund were not guaranteed; and there was no assurance that the Fund would maintain a $1.00 NAV.  Defendants were not obligated to anticipate every possible scenario.  In re Novagold Resources, Inc. Secs. Litig., 629 F.Supp.2d 272, 298 (S.D.N.Y. 2009) ("Company officials 'need not be clairvoyant'"); Spielman v. Gen. Host Corp., 402 F.Supp. 190, 194 (S.D.N.Y. 1975), aff'd, 538 F.2d 39 (2d Cir. 1976) (determinations of falsity or materiality are "made upon all the facts as of the time of the transaction and not upon a 20-20 hindsight view").

       2.       There Was No Undisclosed Investment Strategy Change.  Plaintiffs' claim that there was an undisclosed change in the Fund's investment strategy is also legally baseless.  In Hunt v. Alliance North America Gov't Trust, Inc., 159 F.3d 723 (2d Cir. 1998), the Second Circuit rejected an analogous claim that, by investing in securities guaranteed by certain foreign governments, a fund had changed its investment objective in violation of §13(a) of the Investment Company Act.  Like the Fund's investment objective in this case, the investment objective in Hunt was described in "vague, subjective terms":  "'to seek the highest level of current income, consistent with what the Fund's Advisor considers to be prudent investment risk . . .'"  Id., 159

---

[3] Even under the money market reform rules adopted in January 2010 to tighten credit quality and establish liquidity requirements, the Fund's investment in Lehman would have passed muster because the Fund had the requisite percentage of assets in non-commercial paper.

F.3d at 731.  Because plaintiffs alleged no facts indicating that defendant invested in any instrument it considered an imprudent risk, the court found that the complaint did not allege a change in investment strategy.  Ibid.  The same analysis applies here and bars Plaintiffs' claim that, by buying Lehman paper, Defendants changed the Fund's investment strategy.

There is, moreover, authority which establishes that investing in Lehman commercial paper does not conflict with the goal of preserving capital.  In Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contrib. Plan v. Bank of New York Mellon Corp., 2010 U.S. Dist. LEXIS 38702, *20 (S.D.N.Y. April 14, 2010), an asset manager for an ERISA plan was charged with breaching its fiduciary duty by investing in Lehman debt obligations.  Based on the absence of any allegations showing that defendants knew Lehman's collapse was imminent, the court granted defendants' motion to dismiss a claim that "any investment in Lehman was 'imprudent' because of 'what was known or should have been known to a sophisticated investor acting in a fiduciary capacity . . . to preserve principal.'"  (Ellipsis in original.)  Since investing in Lehman did not violate defendants' fiduciary obligation to preserve principal in Board of Trustees, there is no reason why Defendants' purchase of Lehman commercial paper in this case should be treated as a deviation from the Fund's goal of "seek[ing] as high a level of current income as is consistent with the preservation of capital and liquidity."  (Ex. M, p. 6/165.)

B.      Plaintiffs Did Not Plead Reliance

Plaintiffs gloss over the issue raised by their failure to plead reliance, claiming that the arguments Defendants made concerning the class plaintiffs do not apply to them because they brought an individual action. (Pls. Opp. p. 13.)  But, in addition to suing on behalf of themselves, Plaintiffs are also suing as assignees of their customers' claims.  They were therefore required to, but did not, allege that each of their assignors relied on a materially false representation.  Herzfeld v. Laventhol, Krekstein, Horwath & Horwath, 540 F.2d 27, 40 (2d Cir.

1976) (since assignee "stood only in the shoes of its assignors," where just one assignor "was questioned about his reliance" on representations, assignee's fraud claim was dismissed due to lack of reliance by assignors).

As for Plaintiffs' contention that the fraud-on-the-market doctrine entitles them to a presumption of reliance, even Plaintiffs do not contend that this doctrine is relevant to their claims based on pre-September 15, 2008 events, when the Fund's NAV is not alleged to have been miscalculated and its share price could not, in any case, have been affected by any purported misrepresentations. Clark v. Nevis Capital Mgmt., LLC, 2005 U.S. Dist. LEXIS 3158, *57 (S.D.N.Y. Mar. 2, 2005) (fraud-on-the-market theory inapplicable because "'share price of a mutual fund is not affected by alleged misrepresentations and omissions'"). Where reliance cannot be presumed, plaintiffs must plead that they "directly relied upon one or more of the misrepresentations or omissions alleged." Ibid. The Complaint does not allege that Plaintiffs themselves relied on anything Defendants said prior to September 15, 2008, much less that their assignees did so. Since reliance is an essential element of a securities fraud claim and cannot be presumed where share price is not determined by the efficient market, Plaintiffs' claim that they were misled by representations made prior to September 15 is legally insufficient due to their failure to plead actual reliance.

Plaintiffs also are not entitled to a presumption of reliance for their claims based on events after September 15, 2008. Although the court in Cromer Finance Ltd. v. Berger, 205 F.R.D. 113, 131 (S.D.N.Y. 2001), was willing to presume reliance, that holding has limited applicability because it represents a minority view which has never been endorsed by the Supreme Court. Moreover, in view of this Court's ruling at pages 25-26 of its February 24, 2010 decision in the SEC case, a fraud claim cannot be based on Defendants' valuation of Lehman paper on September 15.

C.   **Plaintiffs Have Effectively Conceded that SAI Lacks Standing
to Assert Claims Based on the Events of September 15-16, 2008**

Unable to deny that the Complaint does not allege that either SAI or its customers purchased any Fund shares after September 12, 2008, all Plaintiffs can come up with in response is that this does not affect SAI's standing to sue for misrepresentations concerning the Fund's investment strategy or – more speculatively – that SAI's customers "may well have" made purchases on September 15 and 16, 2008. (Pls. Opp. p. 14.)

Plaintiffs offer no reason to believe that their customers purchased Fund shares after September 12, 2008. Defendants initially raised the standing issue in 2008 when they moved to dismiss Plaintiffs' original complaint. Even though Plaintiffs had more than a year to cure this pleading defect before filing the Complaint, and even though they should have had access to their customers' purchase records, the Complaint still does not allege any purchases or sales by SAI or its customers after September 12. Accordingly, whether or not SAI can claim that it purchased Fund shares based on misrepresentations about the Fund's investment strategy, SAI lacks standing to maintain a claim based on misrepresentations made on September 15 and 16, 2008. Thus, at a minimum, this part of SAI's securities fraud claim should be dismissed.

D.   **Plaintiffs Have Not Alleged Scienter for Their Pre-September 15 Claim**

Plaintiffs' argument that their Complaint adequately pleads scienter for their pre-September 15 claim is largely lifted from this Court's decision denying Defendants' motion to dismiss the SEC's claims, which were based on the events of September 15 and 16. Given the vastly different circumstances surrounding the pre- and post-September 15 claims, Plaintiffs' reliance on the decision in the SEC case is misplaced. While the SEC alleged that Defendants took certain actions on September 15 "to prevent the collapse of the Fund" and "avoid financial and reputational harm," <u>SEC</u> v. <u>Reserve Management Co., Inc.</u>, <u>supra</u>, 2010 U.S. Dist. LEXIS

-7-

16537, *39 (S.D.N.Y. Feb. 24, 2010), Plaintiffs make no comparable allegation concerning Defendants' pre-September 15 actions, nor could they.

Prior to September 15, the Fund was not facing collapse, and the worst thing Plaintiffs have suggested is that Defendants were motivated by a desire to generate fees.  In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig, 2006 U.S. Dist. LEXIS 20758, *41 (S.D.N.Y. April 14, 2006) (scienter not pled where complaint alleged defendants concealed actions to ensure "'more customers would invest in proprietary funds, thereby increasing the amount of money under management which increases the Defendants' commissions, charges, advisory fees, distribution fees . . . , administrative fees, and redemption fees'").

Since Plaintiffs have not alleged any special motive for the pre-September 15 period "distinct from mere profit," In re Global Crossing, Ltd. Secs. Litig., 322 F.Supp.2d 319, 345 (S.D.N.Y. 2004), they have not adequately pled scienter and their securities fraud claim fails.

## II.   THE COMPLAINT DOES NOT PLEAD A VIOLATION OF SECTION 11

In defense of their Section 11 claim, Plaintiffs tell the Court that their allegations are not based on hindsight, but on statements which were false when made.  They are mistaken.

"To be actionable under Section 11, the registration statement must contain an untruth or material omission '<u>when such part became effective</u>.' . . .  A cognizable claim under Section 11 or 12 of the 1933 Act requires plaintiffs to, 'at a minimum, plead facts to demonstrate that allegedly omitted facts both existed, and were known or knowable, at the time of the offering.'" Lin v. Interactive Brokers Group, Inc., 574 F.Supp.2d 408, 421  (S.D.N.Y. 2008).

Here, Plaintiffs do not suggest that, as of September 28, 2007 – the date of the last Prospectus issued before Lehman's bankruptcy filing – Defendants knew that Lehman would file for bankruptcy nearly a year later or what would happen when investors then started making redemption requests.  Moreover, while Lehman ultimately filed for bankruptcy, this does not

mean Lehman paper was an unduly risky investment when made.  Yu v. State Street Corp., 2010 U.S. Dist. LEXIS 17147, *24 (S.D.N.Y. Feb. 22, 2010) (where fund invested in allegedly "risky" mortgage-related instruments, court dismissed claim that prospectuses which stated fund would invest in "high-quality" securities were misleading, finding that "prospectuses clearly communicated that mortgage-related securities were significant to the Fund's portfolio and allowed investors to evaluate [Fund's] investment strategy against existing economic trends").

Nor can Plaintiffs salvage a Section 11 claim by asserting that, since Defendants should have known they had no procedures in place to keep information from being selectively disclosed to favored investors on September 15, 2008, the Prospectus was misleading when it was issued.  This is just another way of faulting Defendants for failing to predict the future and is not actionable under Section 11.  It also has no legal basis.  Plaintiffs do not cite any case holding that liability can be imposed under Section 11 for failing to disclose the possibility that an internal policy might someday be violated, and no such case exists.

There is equally little basis for Plaintiffs' contention – relegated to a footnote (Pls. Opp. p. 17 n. 6) – that RMCI can be liable under Section 11 even though it is not an issuer, director, or underwriter.  American Bank Note Holographic, Inc. Secs. Litig. 93 F.Supp.2d 424, 437 (S.D.N.Y. 2000) §11 liability is "reserved for parties 'who are signators of the registration statement, directors or partners of the issuer, experts named as preparing or certifying a portion of the registration statement, or underwriters of that issue'").  Liability under Section 11 does not extend to a defendant who does not fit within one of these specified categories, no matter how substantial that defendant's involvement.  N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC, 2010 U.S. Dist. LEXIS 29711, *23 (S.D.N.Y. Mar. 26, 2010) ("Moody's and S&P played a significant, if not major role in initial securitization decisions, but this alone is insufficient to create underwriter liability" under §11).

### III.  DEFENDANTS CANNOT BE LIABLE AS SELLERS UNDER SECTION 12(a)

Plaintiffs admit that they are trying to hold Defendants liable as "sellers" under Section 12(a)(2) of the Securities Act solely because Defendants prepared and distributed the Prospectuses.  (Pls. Opp. p. 18.)  Every Circuit Court to have addressed the issue has held that simply signing a prospectus does not make a party a "seller" under Section 12(a), and the most recent rulings by courts in this district have adopted the same reasoning.  For example, in Citiline Holdings, Inc. v. iStar Fin., Inc., 2010 U.S. Dist. LEXIS 29706, *11 (S.D.N.Y. Mar. 26, 2010), the court dismissed a Section 12 claim against defendants who, like Defendants in this case, were alleged to be "sellers" because they signed a registration statement, finding:

> While Section 11 expressly imposes liability upon every signer of the registration statement, Section 12 does not do so.  Plaintiffs' position would render this distinction a nullity and is, in any event, inconsistent with *Pinter's* statement that Congress did not intend to impose liability under Section 12 "for mere participation in unlawful sales transactions."

Since Plaintiffs are wrong that Defendants can be liable as "sellers" under Section 12 by virtue of preparing and distributing the Prospectuses, their Section 12 claim would have to be dismissed even if the Prospectuses contained material misrepresentations, which they do not.

### IV.  THE CONTROL PERSON CLAIMS FALL WITH PLAINTIFFS' PRIMARY CLAIMS

The control person claims that Plaintiffs assert under Sections 15 of the Securities Act and 20 of the Exchange Act should be dismissed based on the legal insufficiency of the primary violations on which they depend.  In re Refco Secs. Litig., 503 F.Supp.2d 611, 637 (S.D.N.Y. 2007) ("control-person liability exists only where there is a primary violation").

### V.  PLAINTIFFS' STATE LAW CLAIMS CANNOT STAND

A.  SLUSA Applies Here and Bars Plaintiffs' State Law Claims

In trying to keep their state law claims from being dismissed under SLUSA, Plaintiffs discuss everything but the language of the statute itself.  Thus, even though SLUSA does not say

-10-

that it applies only where an individual complaint is identical to a class complaint, Plaintiffs assert – irrelevantly – that, in addition to including most of the Class Action claims, their Complaint also includes some claims which were not asserted in the Class Action complaint. (Pls. Opp. p. 20.)  For an individual action to qualify as a "covered class action" under SLUSA, it need not be identical to a class action; all that is required is that the action be part of a "group of lawsuits filed in or pending in the same court and involving common questions of law or fact." Gordon Partners v. Blumenthal, 2007 U.S. Dist. LEXIS 35895, *8-9 (S.D.N.Y. May 16, 2007) aff'd, 293 Fed. Appx. 815 (2d Cir. N.Y. 2008) (while individual "action includes some allegations not found in the class action complaint, the overlap between the two is extensive," making individual action a "covered class action").  Plaintiffs do not deny that this action and the Class Action involve common legal or factual questions, nor could they do so in view of the Multi-District Panel's finding to that effect.  (Ex. E, p. 1.)  SLUSA requires no greater similarity.

Equally specious is Plaintiffs' argument – also unsupported by any legal authority – that SLUSA is inapplicable to them because they opted out of the Class Action.  SLUSA creates no exception for cases brought by opt-outs and has, in fact, been applied to bar opt-outs' claims.[4]  In re AOL Time Warner, Inc. Sec. Litig., 503 F.Supp.2d 666, 669 (S.D.N.Y. 2007) (SLUSA barred claim by opt-outs); Amorosa v. Ernst & Young LLP, 682 F.Supp.2d 351, 375 (S.D.N.Y. 2010) (same).  There is no basis for reading such an exception into the statute.  Amorosa, supra, 682 F.Supp.2d at 375 ("'where the statutory language provides a clear answer,' the plain language of the statute governs and a court's task of statutory interpretation ends there").

---

[4] Plaintiffs are wrong that exempting opt-outs is consistent with SLUSA's goal. SLUSA was enacted to ensure that "national standards" applied to suits involving nationally traded securities.  Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 87 (U.S. 2006).  This purpose would be undermined by allowing opt-outs to pursue claims in state court.

Since this action is a "covered class action" and there is no question that it has been consolidated with the Class Action for pretrial purposes, it is subject to SLUSA. State law claims alleging misrepresentations are therefore barred. By disputing only the applicability of SLUSA to their breach of fiduciary duty claim, Plaintiffs implicitly concede that SLUSA preempts their two Minnesota consumer fraud claims, both of which allege deception in connection with the sale of a security. SLUSA also preempts their breach of fiduciary duty claim because it is based on the same conduct as their securities fraud claims. (Ex. 1 ¶194.)

In In re NYSE Specialists Sec. Litig., 405 F. Supp 2d 281, 307 (S.D.N.Y. 2005), aff'd in part and vacated in part on other grounds, 503 F.3d 89 (2d Cir. 2007), plaintiffs argued, as do Plaintiffs in this case, that their breach of fiduciary duty claim was not preempted by SLUSA because "no misstatement or omission was a necessary condition of their fiduciary duty claims." The court disagreed, finding that those claims also stemmed from manipulative conduct. It explained that the gravamen of the fiduciary duty claims "is that the unlawful conduct described elsewhere in the Complaint constituted a violation of the fiduciary duties owed . . . to Plaintiffs." Ibid. The court also noted that plaintiffs had "failed to identify an instance in which a court has determined that SLUSA permits the assertion of pendent state law claims based on the same conduct that underpins a plaintiff's Section 10(b) claim." Ibid.

In this case, Plaintiffs are in no position to deny that their breach of fiduciary duty claim is based on the same conduct as their securities fraud claim: they actually argue that their breach of fiduciary duty claim is actionable because it alleges that the "shareholders themselves have been defrauded." (Pls. Opp. p. 24.) Since their breach of fiduciary duty claim is based on the same conduct as their securities fraud claim, it is preempted by SLUSA.

B.  Plaintiffs' State Law Claims Are Otherwise Subject to Dismissal

    1.  Demand Should Not Be Excused. The authorities Plaintiffs cite do not establish

-12-

that their derivative claim should proceed notwithstanding their failure to make a demand. One of Plaintiffs' cases, Hurley v. FDIC, 719 F.Supp. 27 (D. Mass. 1989), involved a fraud claim – not a claim for breach of fiduciary duty – and the issue of whether a demand had to be made was never even raised. In another of their cases, Blasberg v. Oxbow Power Corp., 934 F.Supp. 21, 28 (D. Mass. 1996), the court held that plaintiff's claim was derivative, not direct. Plaintiffs' only other case, Diamond v. Pappathanasi, 25 Mass. L. Rptr. 500 (Mass. Sup. 2009), involved a closely-held corporation. In ruling that the shareholder's claim was direct rather than derivative, the court noted that "the complaint alleges that [plaintiff] personally was misled with respect to the Richdale spinoff" and that "the Richdale spinoff was not a corporate opportunity . . . , but rather was an investment opportunity offered to the shareholders individually."

Nothing comparable is alleged here. On the contrary, only the Fund could be injured by the conduct Plaintiffs attribute to Defendants in their breach of fiduciary duty and gross negligence claims: "[f]ailing to properly preserve the assets of the Primary fund; [f]ailing to invest the assets in a way consistent with the Primary Fund's investment objective; [a]cting in their own self-interest to the detriment of the Primary Fund shareholders." (Ex. A¶197(a)-(c); see also Id.,¶206.) Plaintiffs' breach of fiduciary duty and negligence claims are therefore derivative and cannot be maintained because they were not preceded by a demand.

2. The Minnesota Consumer Fraud Claims Cannot Stand. In response to Defendants' argument that Plaintiffs lack standing to pursue their Minnesota consumer fraud claims because they will not yield a public benefit, Plaintiffs offer a *non sequitur*: they say their action benefits the public because Defendants' conduct was aimed at the public. (Pls. Opp. p. 25.) Even if Defendants' conduct had been aimed at the public, it would not automatically follow that the public will benefit from this action. Rather, as the court held in Zutz v. Case Corp., 2003 U.S. Dist. LEXIS 21555, *10 (D. Minn. Nov. 21, 2003), aff'd in part and reversed in

part on other grounds, 422 F.3d 764 (8th Cir. 2005),"To determine whether a lawsuit is brought for the public benefit the Court must examine not only the form of the alleged misrepresentation, but also the relief sought by the plaintiff." (Emphasis added.)  Where the only relief sought is compensatory damages for the benefit of a specific group of investors, an action yields no public benefit.  Cummings v. Paramount Partners, LP, 2010 U.S. Dist. LEXIS 51579, *75-76 (D. Minn. Mar. 1, 2010) (in dismissing claim under Consumer Fraud Act due to lack of public benefit, court found that, "although Plaintiffs seek relief for a number of investors, 'the benefit that will result, if they succeed, will accrue to the exclusive benefit of those individual investors because the 'redress' sought is 'to compensate Plaintiffs for their injuries'").  If Plaintiffs were granted the relief they seek in this case, only they (or those who invested in the Fund through them) would benefit; the rest of the public – including other Minnesota investors in the Fund – would receive nothing.  Accordingly, this action would not yield a public benefit.

Moreover, where relief is not needed to prevent ongoing misconduct, courts have held that an action will not benefit the public.  Cummings, supra, 2010 U.S. Dist. LEXIS 51579, *76 ("the fact that the SEC has frozen the assets of Paramount, Lawton, and Crossroad means that this case does not involve a product that is still on the market, thus further suggesting that the public will not benefit from Plaintiffs' claims").  Here, the Fund is no longer being marketed and is being liquidated with oversight from the Court and the SEC.  Since no representations about the Fund are being made and shares are not now being sold, this action cannot benefit the public.

Plaintiffs also have not explained how they can pursue a claim available only to "consumers."  The one case they cite, La Parilla, Inc. v. Jones Lang Lasalle Am., Inc., 2006 WL 2069207, *7-8 (D. Minn. July 26, 2006), does not help them.  In dismissing a Consumer Fraud Act claim, the court found that a restaurant operator could qualify as a consumer.  Plaintiffs are not the owners of a single restaurant; they are professional broker-dealers in the business of

giving customers investment advice. As such, they cannot fairly be characterized as consumers within the meaning of the statute.

Finally, Fund shares are not "merchandise" and therefore are not covered by the Consumer Fraud Act. As the Minnesota Court of Appeals explained in <u>Loop Corp.</u> v. <u>McIlroy</u>, 2004 Minn. App. LEXIS 1146,*17-18 (Minn. Ct. App. Oct. 5, 2004):

> "Merchandise" is defined as "any objects, wares, goods, commodities, intangibles, real estate, loans, or services." Minn. Stat.§325F.68, subd. 2 (2002). Securities are not expressly included. Further, Minn. Stat.§325F.67, regarding false statements in advertising, differentiates securities from merchandise. The legislature clearly included securities within purview of one portion but chose not to refer to them in sections 325F.68 and 325F.69. This fact, coupled with the fact that the legislature created a separate statutory scheme to address securities violations – Minnesota Securities Act, Minn. Stat.§80A.01 – supports the . . . conclusion that securities are not included in the definition of merchandise.

Thus, even if Plaintiffs' Minnesota consumer fraud claims were not preempted by SLUSA, they would still have to be dismissed because Plaintiffs lack standing to pursue them and the statutes are otherwise inapplicable.

## CONCLUSION

For the reasons set forth above and in the reply papers in support of Defendants' motion to dismiss the Class Action complaint, Defendants respectfully submit that the Complaint should be dismissed.

Dated: New York, New York  
       September 3, 2010

DUANE MORRIS LLP

By: /s/ Fran M. Jacobs  
    Fran M. Jacobs  
    John Dellaportas  
1540 Broadway  
New York, New York 10036  
Telephone: (212) 692-1000  
Facsimile: (212) 692-1020  
Attorneys for Defendants